J-S19019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FATIMAH ELAINE GUTHRIE | : | |
| | : | |
| Appellant | : | No. 1294 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 5, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000485-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FATIMAH ELAINE SHO GUTHRIE | : | |
| | : | |
| Appellant | : | No. 1521 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 12, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000554-2023

BEFORE:  SULLIVAN, J., NEUMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NEUMAN, J.:                    **FILED: August 11, 2026**

Appellant, Fatimah Elaine Guthrie, appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of 15 to 35 years' incarceration, imposed in two separate cases, following her entry of negotiated guilty

---

[*] Former Justice specially assigned to the Superior Court.

pleas.[1,2]  On appeal, Appellant seeks to challenge the trial court's denial of her motion to withdraw her guilty pleas and the discretionary aspects of her sentence.  Additionally, Appellant's counsel, Erich R. Spessard, Esq., seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Attorney Spessard sets forth the following factual background of Appellant's cases in his ***Anders*** brief:

> The … case [at Docket 554-2023] began after an investigation was initiated [in response to] the death of [Lee Rumbaugh ("Rumbaugh") on February 25, 2023.]
>
> ***
>
> Circumstances at the scene caused officers to believe Rumbaugh's likely cause of death was an overdose.  Analysis of Rumbaugh's phone showed [it] contained Facebook Messenger messages [which included] recent conversations with an individual … known to police as Autum Graham ("Graham").
>
> ***

---

[1] We granted Appellant's application to consolidate these appeals by order entered January 8, 2026.

[2] On June 12, 2024, the trial court amended Appellant's sentence at Docket No. CP-33-CR-0000554-2023 ("Docket 554-2023"), to correct a clerical error regarding restitution.  As such, Appellant's appeal at Docket 554-2023 is taken from the June 12, 2024 amended judgment of sentence.

On February 25, 2023, Chief Markle and Officer [Andrew] Turnbull of the Brookville Borough Police executed a search warrant to acquire a black Samsung cellular device from … Graham.[3]

On March 13, 2023, Rumbaugh's toxicology report … came back with findings indicating that he had notable amounts of fentanyl … in his system. On May 16, 2023, a Meta platforms … search warrant was returned containing detailed conversations held the day prior to Rumbaugh's death between … Graham and "Gnarly Guthrie," later identified as Appellant.

In these conversations[,] Graham and Appellant arranged a meeting for the sale of controlled substances. … As the conversation continued[,] Graham informed [Appellant] that she had a total of [$]550 … for different people. [Appellant] agreed and told Graham to be there at 6[:]30….[4]

\*\*\*

Additionally, messages between Appellant and … Graham indicate that Graham was aware the controlled substance she was buying was fentanyl and not simply heroin, as she provided numerous messages with online information about the duration of fentanyl detectability for drug testing….

\*\*\*

The arrangement [made on February 24, 2023,] was that Ronald [Graham, Autum's brother,] would provide $40 on behalf of Rumbaugh to cover [that amount] of heroin/fentanyl. … [Graham told police] that she traveled to [Appellant's] residence[,] … walked to the window alone[,] and received the controlled substance from someone believed to be Appellant's wife, and that the transaction was orchestrated through Appellant's Facebook account.

… [They then] traveled to [Rumbaugh]'s residence, where [Graham] exited the vehicle[,] … placed the controlled substance in the cup holder of [Rumbaugh]'s vehicle, took possession of the $40 [he had left there for her], and left.

---

[3] Chief Markle's first name is not evident from the record.

[4] It is unclear from the record whether 6:30 refers to a.m. or p.m.

*\*\**

> On September 13-14, 2023, multiple controlled buys of suspected fentanyl were made from Appellant.  On September 15, 2023, at approximately [6:00 a.m.], a search warrant was … granted … for Appellant's residence [and subsequently executed, leading to the separate charges at Docket No. CP-33-CR-0000485-2023 ("Docket 485-2023")].

***Anders*** Brief at 9-15 (unnecessary capitalization omitted).

On June 5, 2024, Appellant entered pleas of guilty at Docket 485-2023 to two counts of Persons Not to Possess Firearms, 18 Pa.C.S. § 6105(a)(1), and one count of Possession with Intent to Deliver ("PWID"), 35 P.S. § 780-113(a)(30).  Appellant also pled guilty at Docket 554-2023 to one count of Drug Delivery Resulting in Death ("DDRD"), 18 Pa.C.S. § 2506(a), one count of Corrupt Organizations — Interest or Control in Enterprise, 18 Pa.C.S. § 911(b)(2), and two counts of PWID.  She was sentenced at that time in accordance with the terms of the negotiated plea agreement to the aggregate sentence set forth *supra*.  She did not file a post-sentence motion or direct appeal.

On June 27, 2025, Appellant filed timely *pro se* petitions under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Attorney Spessard was appointed as counsel on July 22, 2025, and amended PCRA petitions were filed on September 8, 2025.[5]  On September 10, 2025, the PCRA court granted Appellant's amended PCRA petitions, reinstating her post-sentence and direct

---

[5] Appellant was initially appointed counsel on July 1, 2025, however, due to a conflict of interest, Attorney Spessard was subsequently appointed.

- 4 -

appeal rights. Appellant filed post-sentence motions on September 17, 2025, seeking to withdraw her guilty pleas and/or have her sentence modified, which were denied by the trial court the same day. On October 8, 2025, Appellant filed *nunc pro tunc* notices of appeal at each docket. In response to the trial court's order directing Appellant to comply with Pa.R.A.P. 1925, Attorney Spessard filed Rule 1925(c)(4) statements of intent to withdraw from representation, which noted that while he could not find any non-frivolous arguments, his client wished to raise a challenge to the discretionary aspects of her sentence.[6] The trial court subsequently issued a brief Rule 1925(a) opinion regarding the discretionary aspects of sentencing.

Attorney Spessard's **Anders** brief identifies three issues for our review:

1. Did the trial court err in denying Appellant's request to withdraw her plea[s]?

2. Did the trial court err in sentencing … Appellant pursuant to the terms of [the] plea agreement?

3. Are there any other issues of arguable merit that could be raised on appeal?

**Anders** Brief at 2.

On January 30, 2026, Attorney Spessard filed with this Court a petition to withdraw from representing Appellant. The same day, counsel also filed an **Anders** brief, discussing the above-stated issues and concluding they are

---

[6] We note that although these statements were titled "Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(a)(2)(i)[,]" Appellant's cases do not involve a children's fast track matter, and the substance of the statements are consistent with a Rule 1925(c)(4) statement of intent to withdraw.

frivolous, and Appellant has no other, non-frivolous issues she could pursue herein. Appellant did not file a *pro se* or counseled response to either the brief or petition. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago***. The brief must:
>
>> (1) provide a summary of the procedural history and facts, with citations to the record;
>>
>> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>>
>> (3) set forth counsel's conclusion that the appeal is frivolous; and
>>
>> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> ***Santiago***, 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, … 936 A.2d 40 ([Pa.] 2007).

***Commonwealth v. Orellana***, 86 A.3d 877, 879-80 (Pa. Super. 2014).

Substantial compliance with the ***Anders*** requirements is sufficient. ***See Nischan***, 928 A.2d at 353. After determining counsel has satisfied these technical requirements of ***Anders*** and ***Santiago***, this Court must then

"conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In this case, Attorney Spessard's *Anders* brief substantially complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeals are frivolous. He also explains his reasons for reaching that determination and supports his rationale with citations to the record and pertinent legal authority. Attorney Spessard also attached a letter to his *Anders* brief directed to Appellant, in which he informed her of the rights enumerated in *Nischan* and states he has attached a copy of his *Anders* brief. Accordingly, we conclude counsel has substantially complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous claims she could pursue on appeal.

Appellant's first challenge is regarding the trial court's denial of her motions to withdraw her guilty pleas. *See Anders* Brief at 18-22. Appellant argues that "[al]though her plea[s were] otherwise tendered knowingly, voluntarily, and intelligently, she should not have been subject to the charge of [DDRD] or, in the alternative, her sentence to [DDRD] should have been …

equivalent [to] involuntary manslaughter" and, thus, a manifest injustice occurred. *Id.* at 20.

"It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." ***Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa. Super. 2017) (applying an abuse of discretion in the post-sentencing context). In ***Commonwealth v. Broaden***, 980 A.3d 124 (Pa. Super. 2009), we summarized the principles governing post-sentence motions to withdraw a guilty plea as follows:

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A[n appellant] must demonstrate that manifest injustice would result if the court were to deny his [or her] post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

*Id.* at 129 (citations omitted).

"The Pennsylvania Rules of Criminal Procedure require the [trial] court to conduct an on the record inquiry to determine whether the plea is voluntarily and knowingly tendered." ***Commonwealth v. Hodges***, 789 A.2d 764, 765 (Pa. Super. 2002) (citing Pa.R.Crim.P. 590(a)). The trial court must determine whether

> (1) … the defendant understand[s] the nature of the charges to which he [or she] is pleading guilty[;]
> (2) … there [is] a factual basis for the plea[;]
> (3) … the defendant understand[s] that he [or she] has the right to trial by jury[;]

(4) … the defendant understand[s] that he[ or she] is presumed innocent until … found guilty[;]
(5) … the defendant [is] aware of the permissible range of sentences and/or fines for the offenses charged[; and]
(6) … the defendant [is] aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement[.]

*Commonwealth v. Watson*, 835 A.2d 786, 796-97 (Pa. Super. 2003). Additionally, "[a] person who elects to plead guilty is bound by the statements he [or she] makes in open court while under oath and he [or she] may not later assert grounds for withdrawing the plea which contradict the statements he [or she] made at his [or her] plea colloquy." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted).

Here, Appellant concedes her pleas were knowingly, intelligently, and voluntarily made. *Anders* Brief at 20. This is supported by our review of the record. During Appellant's oral colloquy, the court explained the nature of each of the offenses to which she was pleading guilty, and Appellant replied that she understood. *See* N.T. Plea, 6/5/24, at 4-5. She then waived the reading of the facts underlying her pleas and proceeded to plead guilty to each of the offenses. *See id.* at 5-6. She confirmed on the record that she had watched and understood the video played for her prior to arriving at court where the trial court explained her right to trial by jury, the presumption of innocence, and that the trial court will determine whether to accept her guilty plea or not. *See id.* at 3-4; *see also* Stipulation for Correction of the Original Record, 5/15/26, at 1-7 (containing a transcript of the guilty plea video played for Appellant prior to her appearing before the trial court). Appellant also

confirmed she was aware of the guideline ranges and maximum fines and punishments for each of the offenses. N.T. Plea at 3-4.

Nevertheless, Appellant argues that a manifest injustice occurred as "she should not have been subject to the charge of [DDRD] or, in the alternative, her sentence to [DDRD] should have been … equivalent [to] involuntary manslaughter." **Anders** Brief at 20. We agree with Attorney Spessard that Appellant's assertions are without merit. Appellant's charge of DDRD is supported by the facts set forth *supra* and was specifically agreed to by Appellant when she accepted the terms of the negotiated guilty pleas. Thus, the court properly sentenced Appellant for the offense of DDRD, rather than impose a sentence equivalent to the crime of involuntary manslaughter. To the extent Appellant seeks to withdraw her guilty pleas because she is unhappy with the length of sentence the court imposed, it is well-settled that "disappointment by a defendant in the sentence actually imposed does not represent manifest injustice." **Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa. Super. 2002) (internal citation omitted). Accordingly, we discern no abuse of discretion in the court's denial of Appellant's post-sentence motions to withdraw her pleas.

The second issue raised by Appellant relates to the discretionary aspects of her sentence. Because she pled guilty, we must examine the effect of her guilty pleas upon her discretionary aspects claim. "Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the

guilty plea." ***Commonwealth v. Morrison***, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). When criminal charges have been resolved through entry of a guilty plea, this Court will "allow an appeal only as to those discretionary aspects of sentencing which have not been agreed upon during the negotiation process." ***Commonwealth v. Dalberto***, 648 A.2d 16, 21 (Pa. Super. 1994).

"[I]n a 'negotiated' plea agreement, where a sentence of specific duration has been made part of a plea bargain, it would clearly make a sham of the negotiated plea process for courts to allow defendants a second bite at the sentencing process." ***Id.*** (citation omitted); ***see also Morrison***, 173 A.3d at 290 ("If either party to a negotiated plea agreement believed the other side could, at any time following the entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement. Permitting a discretionary appeal following the entry of a negotiated plea would undermine the designs and goals of plea bargaining, and would make a sham of the negotiated plea process.") (citation omitted). For these reasons, we are required to dismiss an appeal challenging the discretionary aspects of sentence where the defendant pled guilty under an arrangement that included a negotiated sentence. ***See Commonwealth v. Reichle***, 589 A.2d 1140, 1141 (Pa. Super. 1991).

Here, at the plea hearing held on June 5, 2024, counsel for Appellant and the Commonwealth formulated a plea agreement which was stated on the record by the Commonwealth as follows:

> At [Docket] 554[-]2023, plea of guilt[y] to [count 1, DDRD]…, felony 1, [the agreement is] for 9 to 20 years in a state correctional institution. Count 2, Corrupt Organizations, felony 1[,] she is to receive 30 months to 20 years[' incarceration] running concurrent[ly] with count 1.
>
> … Count 7, [PWID,] an ungraded felony, [the agreement is for] 6 … to 15 years[' incarceration,] with count 8 running concurrent[ly] to count 7; [and with both] running consecutive[ly] to count 1. And count 8 is [PWID] as well[, with the same term of incarceration as Count 7]. This … result[s] in an aggregate sentence of 15 to 35 years.
>
> At Docket 485[-2023], for counts 1 and 2, Person Not to Possess [Firearms], felony 2[,] she is to receive 5 to 10 years in a state correctional institution to run consecutive[ly] to one another but concurrent[ly] to Docket 554[-]2023. Count 3, [PWID], ungraded felony[,] she is to receive 5 to 15 years in a state correctional institution running consecutive[ly] to counts 1 and 2 but concurrent[ly] to the sentence at [Docket] 554[-]2023. This would result in an aggregate sentence of 15 to 35 years[' incarceration,] running concurrent[ly] with the 15 to 35 year[] sentence at Docket 554[-]2023.

N.T. Plea at 2-3 (some capitalization modified).

Having heard the terms of the plea agreement as stated on the record, Appellant pled guilty to each of the charges and waived a presentence investigation report. *Id.* at 5-6. On behalf of Appellant, counsel requested the court accept the plea agreement, which the court did. *Id.* at 7, 8. Additionally, the terms of Appellant's negotiated plea, as stated on the record, are supported by the written guilty plea forms which set forth all terms of the

agreement, were signed by Appellant, and were filed at each docket on June 5, 2024.

As such, Appellant received a sentence that completely aligned with her fully negotiated plea agreement. We are therefore unable to entertain any challenge to the discretionary aspects of Appellant's sentence; hence, the issue identified in counsel's **Anders** brief is entirely frivolous. **See Reichle**, **supra**.

We thus conclude that the claims Appellant seeks to raise herein are frivolous. Additionally, upon our independent review of the record, we have determined there are no other, non-frivolous issues she could assert herein. Thus, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/11/2026